T.C. Memo. 2003-265

UNITED STATES TAX COURT

FREDERICK C. KUMPEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14339-01.                    Filed September 10, 2003.

Frederick C. Kumpel, pro se.

<u>Milton B. Blouke</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  The petition in this case was filed in
response to a Notice of Determination Concerning Worker
Classification Under Section 7436 regarding petitioner's
liabilities pursuant to the Federal Insurance Contributions Act
(FICA) and the Federal Unemployment Tax Act for 1993, 1994, 1995,
1996, and 1997.  The issues for decision are whether Nanci Smith

(Smith) and Teanna Mawson (Mawson) were employees of petitioner for Federal employment tax purposes during 1993 through 1997; whether petitioner is subject to the addition to tax for failure to file Forms 941, Employer's Quarterly Federal Tax Return, as required under section 6651 for all four quarters of each of the years in issue; and whether petitioner is subject to the addition to tax for failure to make a deposit of FICA taxes as required under section 6656 for the years in issue. Petitioner concedes that he is not entitled to relief under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended, and he has not sought relief under section 3509, relating to the wages paid during any of the four quarters of each of the years in issue.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner's principal place of business was in Bakersfield, California, at the time the petition was filed.

In 1985, petitioner began practicing law as a licensed attorney in California. From 1985 through 1993, petitioner worked for private law firms in California on litigation matters. While working with the law firm Young Wooldridge, petitioner met Smith and trained her in spelling, typing, and court procedure.

In 1993, petitioner began his own practice as a sole practitioner. Petitioner's practice included personal injury, employment, real estate, and litigation. Prior to opening his law practice, petitioner consulted a certified public accountant who offered to get petitioner an employer identification number (EIN). Petitioner did not obtain an EIN.

Once petitioner began practicing as a sole practitioner, Smith contacted him requesting work. There was no written employment contract, and petitioner agreed to allow Smith to set her own work schedule at a rate of $10 per hour. Smith would generally telephone petitioner when she was unable to come into the office on a particular day. Petitioner required Smith to keep track of the hours that she worked. Petitioner paid membership dues to the Bakersfield Legal Secretaries Association on behalf of Smith. Petitioner had the authority to fire Smith at any time, and Smith could quit her job at any time. Smith was free to accept another position if it would offer her more money.

Petitioner did not request that Smith work for him on Saturdays or Sundays. From 1993 through 1997, Smith took a 2-week vacation each summer. Smith worked for third parties while working for petitioner and sometimes completed work for petitioner at her home.

During the initial years of the law firm's existence, petitioner operated his law practice out of his home, where Smith performed her job duties. In 1994, petitioner began to rent

office space.  Smith used petitioner's file cabinet, photocopier, stationery, computer, and computer printer to perform tasks for petitioner.  Smith performed general typing, answered the telephone, did bookkeeping, helped track expenses and pay bills, ran errands, filed papers in court, and filed records for petitioner.  Smith answered petitioner's telephone when she was in the office, although she shared this responsibility with the receptionist of the office space that petitioner rented. Petitioner requested that Smith type mailing labels, form letters for medical records, disputed billing letters, Judicial Council forms, lists of closed cases, and billing statements.  Smith did not type any pleading for petitioner.  Petitioner would review Smith's work for errors, and he instructed her to review his work for errors.  Smith also prepared invoices to be mailed to clients.

Petitioner controlled the errands that Smith ran for petitioner.  Smith also purchased supplies for petitioner. Petitioner reimbursed her for expenses that she incurred.

Petitioner controlled the method of handling his incoming and outgoing office mail.  Smith opened the incoming mail for petitioner but did not sort it or discard any unsolicited mail. If petitioner received a bill, he would place a note on it and place it in the pile for unpaid bills.  Smith paid the bills when she was in the office.  Smith handled outgoing mail.  Petitioner directed Smith as to whether to send mail by certified mail, express mail, return receipt requested, or regular mail.

Petitioner determined which enclosures were to be mailed with a document, and Smith prepared the enclosures.

Petitioner controlled how and when a document was filed in a court by his office. Smith filed petitioner's pleadings with the courts. Petitioner required Smith to retain an endorsed or "file stamped" copy of each pleading that was filed.

Petitioner controlled where each document was to be filed in the clients' binders. Petitioner noted instructions on particular documents explaining to Smith where documents should be filed. Petitioner designated the file into which documents should go and in what section of the file. Petitioner also controlled when Smith would make photocopies of documents to be used at trial.

Smith assisted petitioner in closing his legal files during the years in issue. Petitioner controlled when each file was to be closed and the method of closing the file. Smith prepared a storage list of closed files. Petitioner would review the storage list to ensure that he could find the closed files.

In 1997, Smith moved and terminated her working relationship with petitioner. During the second quarter of 1997, petitioner hired a college student, Mawson, on terms similar to those involving Smith. Petitioner trained Mawson as to the work that needed to be done at the law practice. Mawson arranged her work schedule around her college classes. Mawson's duties included

running errands, filing, photocopying, preparing outgoing mail, and tracking and paying bills.

Petitioner did not file Forms 941 for any of the years in issue for either Smith or Mawson. Petitioner did not file any Forms 1099-MISC, Miscellaneous Income, for the work that Smith and Mawson performed. During the years in issue, petitioner reported income from his law firm on a Schedule C, Profit or Loss From Business. Petitioner reported payments to Smith and Mawson as "negative receipts" on the Schedule C and failed to indicate that deductions were being taken for payments made for secretarial services.

OPINION

Employment Status

Whether an employer-employee relationship exists in a particular situation is a factual question. Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995). For the purposes of employment taxes, the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship has the status of an employee". Sec. 3121(d)(2); sec. 3306(i). Section 31.3121(d)-1(c)(2), Employment Tax Regs., defines the common law employer-employee relationship as follows:

> (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by

which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * *

Although the determination of employee status is to be made by common law concepts, a realistic interpretation should be adopted, and doubtful questions should be resolved in favor of employment. Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001).

This Court considers the following factors to decide whether a worker is a common law employee or an independent contractor: (1) The degree of control exercised by the principal; (2) which party invests in the work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. Id. at 270; Weber v. Commissioner, supra at 387. All of the facts and circumstances of each case are considered, and no single factor is dispositive.

Ewens & Miller, Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 387.  Because we decide this case on the preponderance of the evidence, we need not discuss the burden of proof.

1.  Degree of Control

The control factor is the "crucial test" to determine the nature of a working relationship.  Weber v. Commissioner, supra at 387.  The degree of control necessary to find employee status varies with the nature of the services provided by the worker. See Ewens & Miller, Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 388.  To retain the requisite control over the details of an individual's work, the employer need not stand over the individual and direct every move made by the individual; it is sufficient if the employer has the right to do so.  Weber v. Commissioner, supra at 388.

Similarly, the employer need not set the employee's hours or supervise every detail of the work environment to control the employee.  Gen. Inv. Corp. v. United States, 823 F.2d 337, 342 (9th Cir. 1987).  Workers who set their own hours are not necessarily independent contractors.  Id.; Ewens & Miller, Inc. v. Commissioner, supra at 270.

Petitioner argues that "Smith and Mawson were subject to control and direction of petitioner merely as to the result to be accomplished by the work and not as to the means and methods to accomplish the result".  Petitioner relies on Rev. Rul. 57-109,

1957-1 C.B. 328, which determined that a part-time bookkeeper was an independent contractor. In Rev. Rul. 57-109, the bookkeeper worked without corporate direction or supervision over his work, provided his own working papers, and paid his own expenses. The company actually controlled the result of his work and not the manner in which he completed it. Petitioner's case is distinguishable, in part, because of the level of control that petitioner exercised over Smith and Mawson. Petitioner further argues that he had no control over either Smith's or Mawson's work because they were free to set their own hours and were able to come and go as they pleased. This one aspect of the relationship, even if true, is not determinative. Petitioner's proposed findings of fact recite many aspects of Smith's and Mawson's job over which petitioner exercised control. Petitioner agreed with respondent's proposed findings of fact that petitioner had the authority to control how any file was closed by a secretary, to control what errands a secretary would run for him, to control how and when a document was filed in a court, to control how any incoming mail was handled, to control what went into the outgoing mail and how it was sent, and to control what documents were photocopied. In addition, petitioner states in his brief that he had "authority to control the manner in which Smith's tasks were performed" subject to Smith's schedule.

Petitioner emphasized at trial and in his brief that, if Smith or Mawson were not in the office on a particular day, he would complete the tasks that they normally would complete.

Petitioner's reliance on Smith's and Mawson's flexible schedules is misplaced. The hours were flexible because of the agreement between petitioner and the secretaries and not by unilateral action by the secretaries. While Smith and Mawson were performing services for petitioner, they were under the direct control of petitioner, who determined the manner in which they would perform their jobs. Petitioner controlled both Smith and Mawson in the completion of their job functions in a manner consistent with employee status.

2. Investment in Facilities

Respondent emphasizes that petitioner invested in the facilities of the law practice, claiming deductions over the years in issue of over $49,000 for supplies and office expenses used by Smith and Mawson. Respondent also emphasizes that petitioner reimbursed Smith for supplies she purchased for the office.

In this case, petitioner supplied the office space, a computer, and other equipment used by Smith and Mawson to perform their functions. Although petitioner testified that Smith sometimes worked from her home, her choice to work at home, using her own computer, was her preference. It appears that Smith's work at home was de minimis as well as voluntary. Smith was not required to make any investment. See, e.g., Weber v. Commissioner, supra at 390. These facts are indicative of an employer-employee relationship.

3. <u>Opportunity for Profit or Loss</u>

Respondent argues that Smith and Mawson had no opportunity for profit or loss beyond the $10 per hour that they earned for work completed.  Petitioner claims, without reason and contrary to authority, that this factor is irrelevant to the analysis. Because Smith and Mawson did not have an opportunity for profit from petitioner's law practice and because they were not at risk for loss, this factor weighs in favor of an employer-employee relationship.  See, e.g., <u>Weber v. Commissioner</u>, <u>supra</u> at 391.

4. <u>Right To Discharge</u>

Respondent argues that petitioner had the right to discharge Smith or Mawson at any time.  Petitioner argues without evidence, reason, or authority that Smith and Mawson could not be discharged for "the reasons usually associated with the firing of an employee".  The evidence shows that petitioner could discharge either Smith or Mawson at any time, consistent with employee status.

5. <u>Integral Part of Business</u>

Respondent emphasizes that the activities completed by Smith and Mawson were all in relation to petitioner's practice of law. Petitioner admits on brief that Smith and Mawson "performed work which was part of petitioner's regular business".  He claims, however, that Smith and Mawson were also free to work for other people, complete school work, or handle family matters. Petitioner's claim is irrelevant to the analysis and lacks merit.

During the years in issue, the functions that petitioner hired Smith and Mawson to complete were functions of the operation of his law practice, including filing court documents, photocopying, running errands, and sending outgoing mail. These facts indicate employee status.

6. Permanency of the Relationship

Smith worked for petitioner for 4 years, and Mawson worked for petitioner for three quarters of 1997. Respondent asserts that these time periods are sufficient to create a permanent relationship. Petitioner argues that "there was never anything permanent about the relationship with either Smith or Mawson. The relationship was loose and transitory in every respect."

A transitory work relationship may point toward independent contractor status. See Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273. Smith, however, did not have a transitory relationship with petitioner. Petitioner testified that Smith could leave at any time for a better offer; however, this possibility does not demonstrate a transitory relationship. Although Smith and Mawson did not always work regular schedules and Smith sometimes worked for third parties, they worked in the course of petitioner's regular business, and their respective relationships with petitioner were not transitory in nature.

7. Relationship the Parties Thought They Created

Petitioner argued repeatedly at trial and on brief that he intentionally established Smith and Mawson as independent

contractors because he could not afford employees.  Respondent argues that Smith and Mawson should be considered employees of petitioner despite the parties' understanding to the contrary.  It is respondent's position that, although petitioner informed Smith and Mawson that they were independent contractors, this is not a significant factor in the analysis because petitioner failed to file Forms 1099-MISC for either secretary to demonstrate an intent to treat Smith and Mawson as independent contractors.

A contract between an employer and its staff establishing an independent contractor relationship may be set aside if the common law principles defining an employer-employee relationship dictate otherwise.  See <u>Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash. (In re Vizcaino)</u>, 173 F.3d 713, 716, 723 (9th Cir. 1999) (applying common law analysis of <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 323-324 (1992), in determining worker classification).  The parties' characterization of the relationship is not controlling.  See <u>Ewens & Miller, Inc. v. Commissioner</u>, <u>supra</u> at 268-269; sec. 31.3121(d)-1(a)(3), Employment Tax Regs.

Petitioner did not follow consistent procedures in treating Smith and Mawson as independent contractors, namely securing an employer identification number and filing Forms 1099-MISC.  The record confirms that he and his secretaries intended to avoid rules applicable to employees, but the intent was inconsistent with the reality of their relationship.  (His manner of reporting

payments for secretarial services on his Schedules C suggests an intention to conceal the relationship and the employment tax issue.)  Where, as here, common law factors compel a finding that an employer-employee relationship exists, the parties' intentions to the contrary will not be given effect.

8.  Conclusion

After considering all of the facts and circumstances in this case, we conclude that both Smith and Mawson were employees of petitioner during the years in issue.

Additions to Tax

Under section 6651, a taxpayer who fails to file timely or fails to pay employment taxes shall be assessed an addition to tax, unless it is shown that the failure is due to reasonable cause and not due to willful neglect.  See Conklin Bros. of Santa Rosa, Inc. v. United States, 986 F.2d 315, 317 (9th Cir. 1993); Charlotte's Office Boutique v. Commissioner, 121 T.C. ___, ___ (2003) (slip op. at 30).  To establish reasonable cause, the taxpayer must show that ordinary business care and prudence were exercised in providing for payment of the tax liability.  Sec. 301.6651-1(c)(1) and (2), Proced. & Admin. Regs.  Willful neglect means a "conscious, intentional failure or reckless indifference."  United States v. Boyle, 469 U.S. 241, 245-246 (1985).

Under section 6656, an addition to tax is imposed equal to 10 percent of the portion of an underpayment in tax that is

required to be deposited if the failure to deposit is more than 15 days late.  A taxpayer may avoid the addition to tax by showing that the failure to deposit was due to reasonable cause and not due to willful neglect.  Sec. 6656(a); <u>Charlotte's Office Boutique v. Commissioner</u>, <u>supra</u> at ___ (slip op. at 31).

Petitioner asserts that he "refused to use" an employer identification number and acknowledges the obligations of an employer that he deliberately tried to avoid.  Petitioner's position is essentially that he did not want to incur the obligations of an employer and therefore did not comply with the applicable law.  Petitioner is liable for the additions to tax under section 6651 and section 6656.

We have considered all arguments made by the parties.  Those arguments not discussed are irrelevant or without merit.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.