T.C. Memo. 2006-211

UNITED STATES TAX COURT

ORION CONTRACTING TRUST, KEVIN PETER CARMEL, GENERAL MANAGER,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20633-04.                    Filed September 27, 2006.

Kevin Peter Carmel (General Trust Manager), for petitioner.

Denise G. Dengler, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  The petition in this case was filed pursuant to section 7436 and Rule 291 in response to a Notice of

Determination of Worker Classification, dated July 28, 2004.[1]
Respondent determined that, for purposes of Federal employment
taxes, petitioner's workers were employees and petitioner owed
total employment taxes under subtitle C of the Internal Revenue
Code for the years 1996, 1997, and 1998 of $359,414.28 and
additions to tax under section 6651(f) of $269,560.71.  The
issues for decision are:

(1) Whether the period of limitations for respondent's
reclassification of individuals as petitioner's employees has
passed.  We hold that the period of limitations remains open;

(2) whether the workers listed in the notice of
determination were properly classified as employees for purposes
of Federal employment taxes.  We hold that the identified
individuals were petitioner's employees; and

(3) whether petitioner is liable for additions to tax for
the years 1996, 1997, and 1998 pursuant to section 6651(f).  We
hold that petitioner is not so liable.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated
facts are incorporated in our findings by this reference.  Orion
Contracting Trust (petitioner) is a trust organized under the

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

laws of the State of Florida and has its principal place of business in Boynton Beach, Florida.

Petitioner was formed in October 1995 when Kevin Peter Carmel and his brother-in-law, Pandelis Damigos, entered into a contract with American Asset Protection to establish an asset protection plan and create a common law trust. Carmel and Damigos were appointed the general trust managers of petitioner and thereafter operated their construction business through the trust. The agreement with American Asset Protection included a provision for the preparation of independent contractor agreements for individuals providing services for petitioner.

Petitioner's original trustees included John Ellis, who later resigned as trustee before going to jail for his connection with American Asset Protection; Sharon Alfonso, who resigned as trustee shortly after the formation of petitioner; and Karen Clay and Hilda Terrasi, who are the sisters of Carmel and Damigos, respectively. None of the trustees of petitioner were involved in the day-to-day operation of its business. In December 1995, Ellis signed a durable power of attorney providing Carmel and Damigos with the power and authority to do anything Ellis, as trustee, was authorized to do.

During 1996, 1997, and 1998, petitioner operated a construction and remodeling business doing work repairing and patching concrete, mixing and applying concrete, and other

construction work. During these years, petitioner paid several individuals to assist in its business who provided petitioner with both skilled and unskilled labor. These individuals performed work repairing and patching concrete, waterproofing concrete, and other construction work. Some of the workers provided their own hammers and Skil-saws. The rest of the supplies and materials, including the concrete used by the workers, were provided by petitioner.

These individuals were under the direction and control of petitioner, with petitioner's managers, Carmel and Damigos, responsible for their management and supervision. The individuals worked at more than one location for petitioner during the years 1996, 1997, and 1998, and petitioner decided which location to send the individuals to. Many of the individuals worked for petitioner during all 3 years in question.

Petitioner paid these individuals, by cash and check, almost weekly. Petitioner did not provide any benefits and did not treat any of the individuals as employees for 1996, 1997, or 1998. Petitioner did not file any Forms W-3, Transmittal of Wage and Tax Statements, with accompanying Forms W-2, Wage and Tax Statement, with the Social Security Administration for 1996, 1997, or 1998. Petitioner did not file any Forms 1096, Annual Summary and Transmittal of U.S. Information Returns, with accompanying Forms 1099, with the Internal Revenue Service (IRS)

for 1996, 1997, or 1998.  Petitioner did not file any Forms 941, Employer's Quarterly Federal Tax Return, for any periods in 1996, 1997, or 1998 with the IRS with respect to these workers, nor did petitioner file any Forms 940, Employer's Annual Federal Unemployment Tax Return, for 1996, 1997, or 1998.  Finally, petitioner did not file any Forms 1041, U.S. Income Tax Return for Estates and Trusts, for 1996, 1997, or 1998.

Respondent's examination of petitioner was itself a product of the income tax examinations of petitioner's managers, Carmel and Damigos, when they both failed to file income tax returns for the 1996 and 1997 tax years.  As part of the examination of Carmel and Damigos, respondent requested that petitioner make its books and records available for inspection.  When petitioner failed to provide respondent with any documents, respondent summoned the records from the banks of both Carmel and petitioner.  Petitioner filed a motion to quash the summons. This motion was later dismissed, and the bank records were produced to respondent.

After respondent received petitioner's records from the banks, petitioner was referred within the IRS for an employment tax examination.  A notice of examination was sent to petitioner on November 26, 2001, informing it of the examination and requesting that petitioner make certain documents related to petitioner's business and workers available for inspection.  This

first letter was returned as undeliverable. Respondent then sent out a postal tracer, and on January 11, 2002, respondent sent an additional letter to petitioner again informing petitioner of the examination and requesting that petitioner make certain documents pertaining to its business and the workers in question available for inspection. The letter also requested a meeting with petitioner on January 31, 2002, to conduct an interview. After sending the second letter, respondent followed up with a telephone call to confirm the meeting and left a message on petitioner's answering machine to that effect.

When a representative of respondent arrived at the address listed for petitioner on January 31, 2002, she was greeted by Carmel's wife. Neither Carmel nor Damigos was present. After being contacted by his wife by telephone, Carmel informed the representative that a response from petitioner to the notice had already been mailed.

Ultimately, petitioner did not comply with respondent's request to make its documents available for inspection. At trial, Carmel testified that the records were previously subpoenaed by a Federal grand jury, and there is no evidence to the contrary in the record.

Respondent then used the records previously summoned from petitioner's banks to help determine the status of petitioner's workers. Petitioner eventually did meet with respondent once for

a closing conference after respondent issued a 30-day letter to petitioner.

On July 28, 2004, respondent sent petitioner the Notice of Determination of Worker Classification informing petitioner (1) that the examined workers were employees, (2) that petitioner was not entitled to relief under section 530(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended, and (3) that petitioner owed additional employment taxes and additions to tax under section 6651(f). Petitioner then timely filed a petition with this Court under section 7436 alleging, among other things, (1) that the workers cited in respondent's notice of determination were not employees of petitioner, (2) that the period of limitations for the assessment of taxes referred to in respondent's notice of determination had expired, and (3) that petitioner's failure to file employment tax returns was not fraudulent.

OPINION

I. Jurisdiction

At the outset, we briefly address petitioner's contention that this Court lacks jurisdiction.[2] Under section 7436(a), this

---

[2]Petitioner also offers several frivolous arguments challenging respondent's notice of determination. We decline to parse through the specifics of petitioner's arguments characteristic of tax-protester rhetoric because doing so might suggest that petitioner's arguments possess some degree of colorable merit. See Crain v. Commissioner, 737 F.2d 1417 (5th
(continued...)

Court has jurisdiction to determine (1) whether an individual providing services to a person is that person's employee for purposes of subtitle C, (2) whether the person, if in fact an employer, is entitled to relief under section 530 of the Revenue Act of 1978, and (3) the correct amount of employment taxes which relate to the Commissioner's determination concerning worker classification.  Thus, because respondent has issued a notice of determination that the individuals in question were petitioner's employees and that petitioner owes employment taxes and additions to tax with respect thereto, we have jurisdiction to hear petitioner's challenge to respondent's determination.

II.  Period of Limitations

Petitioner next argues that the notice of determination is invalid because it was sent after the expiration of the period of limitations.

Section 6501(a) provides: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)".  However, if the taxpayer fails to file a return, the Commissioner may assess the tax at any time.  Sec. 6501(c)(3).

_____

[2](...continued)
Cir. 1984).  To the extent petitioner attempts to state a claim under sec. 7214, we are without jurisdiction to hear that claim. See, e.g., Rice v. Commissioner, T.C. Memo. 1978-334.

Petitioner did not file any employment tax returns for 1996, 1997, or 1998. Thus, the period of limitations on assessment of employment taxes remains open indefinitely, and the notice of determination sent by respondent was within the statutory limit.

III. Classification of Petitioner's Workers

The employment tax sections of the Internal Revenue Code are contained in subtitle C. Sections 3111 and 3301 impose taxes on employers under the Federal Insurance Contributions Act (FICA) and the Federal Unemployment Tax Act (FUTA). Section 3101 imposes a tax on employees under FICA based on their wages paid, which the employer is required to collect under section 3102. Under sections 3402 and 3403, employers are liable for withholding from their employees' wages the employees' shares of Federal income tax.

Respondent determined that petitioner's workers were employees for purposes of employment taxes and thus that petitioner is liable for withholding the proper amounts of tax under sections 3101, 3111, 3301, and 3402. Petitioner challenges respondent's classification of the individuals listed in the notice of determination as employees of petitioner. Petitioner maintains that these individuals were independent contractors, and thus it was not responsible for withholding employment taxes.

Respondent's determinations of fact are presumptively correct, and petitioner bears the burden of proving, by a

preponderance of the evidence, that those determinations are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  This rule also applies to the Commissioner's determination that a taxpayer's workers are employees for the purpose of employment taxes.  Allen v. Commissioner, T.C. Memo. 2005-118.  While petitioner bears the burden of proof, we decide this case by the preponderance of the evidence.  See Blodgett v. Commissioner, 394 F.3d 1030, 1035 (8th Cir. 2005), affg. T.C. Memo. 2003-212.

Whether an employer-employee relationship exists in a particular situation is a factual question.  Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995).  For the purposes of employment taxes, the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".  Secs. 3121(d)(2), 3306(i); Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001).  Section 31.3121(d)-1(c)(2), Employment Tax Regs., defines the common law employer-employee relationship as follows:

> Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which

the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * *

In deciding whether a worker is a common law employee or an independent contractor, this Court considers: (1) The degree of control exercised by the principal; (2) which party invests in the work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship that the parties believed that they were creating. Ewens & Miller. Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 387. All of the facts and circumstances of each case are considered, and no single factor is dispositive. Ewens & Miller. Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 387.

While no single factor is dispositive, the degree of control exercised by the principal over the details of the individual's work is one of the most important factors in determining whether a common law employment relationship exists. See, e.g., Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S.

440, 448 (2003); Leavell v. Commissioner, 104 T.C. 140, 149 (1995). All that is necessary is that the principal have the right to control the details of the individual's work. Ewens & Miller, Inc. v. Commissioner, supra at 270.

Petitioner stipulated that the workers in question were under its direction and control. Petitioner's managers, Carmel and Damigos, were responsible for their management and supervision. When petitioner performed work at more than one location during 1996, 1997, and 1998, petitioner determined which location to send the workers to. At trial, petitioner's manager Carmel again testified that the workers were under the control of petitioner on the jobs they were working on for petitioner. Accordingly, this factor weighs heavily towards a finding that petitioner's workers were in fact employees and not independent contractors.

Many of the other common law factors also evidence an employer-employee relationship. For instance, the work performed by these individuals was precisely of the type and kind performed in the normal course of petitioner's business-- repairing and waterproofing concrete.

Further, from the record of payments to these individuals that respondent was able to compile, we find that many of the individuals worked for petitioner for 2 or more years. Thus, we find that the relationship between petitioner and the workers

enjoyed a fair degree of permanency.  Additionally, there was no evidence that these individuals enjoyed the opportunity for profit or loss beyond the work performed for, and hourly wage paid by, petitioner.  Finally, while Carmel testified that some of the workers provided their own tools, including hammers and in some cases Skil-saws, many of the materials needed for the work, including the concrete, were provided by petitioner.  These factors all suggest to the Court that the individuals were in fact employees of petitioner and not independent contractors.

In contrast, the only evidence before the Court to support a finding that the workers were independent contractors is petitioner's intent to create such a relationship.  The contract Carmel and Damigos signed to form petitioner included a provision for the preparation of independent contractor agreements.  While evidence of the parties' understanding of the relationship is one factor we consider, it is not enough to overcome the weight of the other factors which clearly evidence an employer-employee relationship.  See, e.g., <u>Kumpel v. Commissioner</u>, T.C. Memo. 2003-265 ("Where, as here, common law factors compel a finding that an employer-employee relationship exists, the parties' intentions to the contrary will not be given effect.").

Accordingly, we find that the individuals were employees of petitioner for purposes of employment taxes.[3]

IV. Additions to Tax

Finally, we turn to the question of whether petitioner is liable for additions to tax under section 6651(f) for the fraudulent failure to file employment tax returns as respondent has determined.

Section 6651(f) imposes an addition to tax of up to 75 percent of the amount of tax required to be shown on a return where the failure to file the return is due to fraud.  The Commissioner bears the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. 632, 646, 652-653 (1994).  We consider the same factors under section 6651(f) that are considered in imposing the fraud penalty under section 6663 and former section 6653(b).  Clayton v. Commissioner, supra at 653; see also Neely v. Commissioner, 116 T.C. 79, 85-86 (2001) (applying the extensive body of law addressing fraud in the context of income, estate, and gift taxes to the employment tax context).

---

[3]Petitioner does not articulate a basis for relief under sec. 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885.  Even if petitioner had sought sec. 530 relief, such relief would be denied because petitioner did not file any returns with respect to the individuals in question as required by sec. 530(a)(1)(B).

Fraud is defined as an intentional wrongdoing designed to evade tax known or believed to be owing. Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Fraud is never presumed and must be established by independent evidence that establishes fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may be proven by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).

Courts have developed several indicia, or "badges of fraud", from which the requisite fraudulent intent can be inferred. They include: (1) Failing to file tax returns, (2) understating income, (3) concealing assets, (4) failing to cooperate with tax authorities, (5) making frivolous arguments, (6) failing to make estimated tax payments, (7) giving implausible or inconsistent explanations of behavior, and (8) being convicted of willful failure to file an income tax return. Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, supra at

307.  This list is nonexclusive.  Niedringhaus v. Commissioner, supra at 211.  While no single factor is necessarily sufficient to establish fraud, the existence of several indicia may constitute persuasive circumstantial evidence of fraud.  Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

Respondent first argues that petitioner's failure to file any employment tax returns for the workers in question is evidence of fraud.  The failure to file tax returns, even over an extended period, does not per se establish fraud.  Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368.  However, an extended pattern of failing to file tax returns may be persuasive circumstantial evidence of fraud.  Id.; Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980).

We find that petitioner's failure to file employment tax returns as evidence of fraud is mitigated by the technical nature of the question of the employees' status in this case.  We do note that petitioner also failed to file the required Forms 1099 for each of the alleged independent contractors who was paid more than $600.  While this failure is inconsistent with petitioner's position concerning the status of the workers, we do not find it evidence of fraud.  Accordingly, we find petitioner's failure to file employment tax returns is not compelling evidence of fraud on these facts.

Respondent next argues that petitioner's attempts to impede respondent's determination of the proper classification of the workers and the amount of taxes owed should be considered evidence of petitioner's fraudulent intent. We find petitioner's conduct with respect to the IRS, both before and after the employment tax examination began, to be less than cooperative, but there is no evidence that petitioner destroyed any evidence or attempted to mislead respondent.

Further, respondent offered no evidence to contradict the testimony of Carmel that the records of petitioner had been previously produced to a grand jury at the time respondent sought them. We find that this fact weakens any inference of fraud that can be drawn from petitioner's failure to produce its records or more fully cooperate.

Accordingly, we find that the record lacks clear and convincing evidence of fraud and conclude that section 6651(f) is not applicable. Respondent has neither pleaded nor sought the addition to tax under section 6651(a) in the alternative, and thus we do not consider it.

V.  Conclusion

Because the workers identified in respondent's notice of determination were under the direction and control of petitioner and because several of the other indicia of a common law employment relationship were present, we conclude that the

workers in question were employees of petitioner and not independent contractors.  Respondent's determinations with respect to employment taxes for 1996, 1997, and 1998 are sustained.  Further, because we do not find clear and convincing evidence of fraud, petitioner is not liable for additions to tax under section 6651(f).

Accordingly, to reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency in employment taxes and for petitioner regarding the additions to tax under section 6651(f)</u>.