T.C. Memo. 2012-343

UNITED STATES TAX COURT

CARNELL SPECKS AND CHERYL SPECKS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1956-11.                    Filed December 11, 2012.

Carnell Specks, pro se.

Sara W. Dalton and Paul C. Feinberg, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge:  Respondent determined a $5,732[1] deficiency and a $1,146

accuracy-related penalty under section 6662(a)[2] with respect to petitioners'

_____

[1]All monetary amounts are rounded to the nearest dollar.

[2]All section references are to the Internal Revenue Code in effect for 2008,
and all Rule references are to the Tax Court Rules of Practice and Procedure, unless
(continued...)

**[\*2]** Federal income tax for 2008.[3] Respondent also asserts an increased deficiency and accuracy-related penalty. After concessions, we are asked to decide three issues. The first issue is whether amounts third parties paid to petitioner Carnell Specks (Mr. Specks) for performing security services as an off-duty police officer are subject to self-employment tax under section 1401. The resolution of this issue turns on whether Mr. Specks had an employee or independent contractor relationship with the third parties. We hold that Mr. Specks had an independent contractor relationship with the third parties and therefore further hold that the amounts paid to him by the third parties were subject to self-employment tax. The second issue is whether a loss petitioners claimed from a rental real estate activity is a passive activity loss subject to limitation under section 469. We hold that it is. The final issue is whether petitioners are liable for the accuracy-related penalty. We hold that they are.

---

[2](...continued)
otherwise indicated.

[3]Petitioners timely filed a petition to contest respondent's determinations in the deficiency notice.

[*3]                          FINDINGS OF FACT

Some of the facts have been deemed stipulated under Rule 91(f) and are so found. The stipulation of facts, with accompanying exhibits, is incorporated by this reference. Petitioners resided in Texas when they filed the petition.

I. Background

During 2008 Mr. Specks was employed as a police officer for the Houston Police Department (HPD) and worked approximately 2,171 hours for HPD that year. Mr. Specks also provided security services for Citation Oil & Gas Corporation (Citation), John M. O'Quinn and Associates PLLC (O'Quinn) and Finger Furniture (collectively, third parties) during off-duty hours.

Mr. Specks provided security to the third parties as needed. Mr. Specks wore an HPD uniform and carried his personal firearm when performing the security services. The third parties did not train, supply or equip Mr. Specks, however. The record is unclear regarding the scope of the security services Mr. Speck provided or the discretion he maintained in performing those services. He had an at-will relationship with each of the third parties.

Citation and O'Quinn paid Mr. Specks on an hourly basis for his services. Citation paid Mr. Specks $17,654 for 618.5 hours of security services. O'Quinn paid Mr. Specks $26,262 for approximately 1,000 hours of security services.

[*4] Finger Furniture paid Mr. Specks $700 for security services. All of the third parties reported the amounts paid to Mr. Specks on Forms 1099-MISC, Miscellaneous Income.

Petitioners owned and rented several properties during 2008 (rental activity). Mr. Specks spent less than 750 hours on the rental activity. Petitioner Cheryl Specks had a full-time job and did not participate at all in the rental activity.

## II. 2008 Tax Return

A return preparer completed the joint individual income tax return petitioners filed for 2008. Petitioners reported the amounts Mr. Specks received from the third parties as "other income." Petitioners also reported on the return that they were engaged in rental real estate activities and claimed a $51,949 loss (rental loss) from those activities.

## OPINION

We need to decide whether Mr. Specks, a police officer, who provided services to the third parties during off-duty hours, is an employee or an independent contractor of the third parties. We also must decide whether Mr. Specks is a real estate professional taking into account the amount of time he spent

**[\*5]** in the rental activity.  Finally, we need to address whether petitioners are liable for the accuracy-related penalty.

I.  Worker Classification

We first address respondent's determination that amounts Mr. Specks received from the third parties were subject to self-employment tax.  Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  This principle applies to the Commissioner's determinations of worker classification as an employee or independent contractor. Boles Trucking, Inc. v. United States, 77 F.3d 236, 239-240 (8th Cir.1996); Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 268 (2001).  The burden of proof shifts to the Commissioner in certain situations under section 7491(a).  Petitioners do not argue that the burden of proof shifts to respondent and have not shown that the threshold requirements have been met.  Therefore the burden of proof remains with petitioners.

Petitioners contend that Mr. Specks was an employee of the third parties and thus the amounts paid to him by the third parties were not subject to self-

[**\*6**] employment tax.[4]  A tax is imposed on a taxpayer's self-employment income. Sec. 1401.  Self-employment income consists of gross income derived by an individual from any trade or business carried on by the individual.  Sec. 1402(a). The self-employment tax, however, does not apply to compensation paid to an employee.  Sec. 1402(c)(2).

Whether an individual is an employee or an independent contractor is a question of fact determined by applying common law principles.  Secs. 1402(d), 3121(d)(2); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-324 (1992); Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988); Kaiser v. Commissioner, T.C. Memo. 1996-526, aff'd without published opinion, 132 F.3d 1457 (5th Cir. 1997); sec. 31.3401(c)-1(d), Employment Tax Regs.  Relevant factors in determining whether a worker is an employee or an independent contractor include (1) the degree of control exercised by the principal over the details of the work, (2) which party invests in the facilities used in the work, (3) the opportunity of the individual for profit and loss, (4) whether the principal has the right to discharge the individual, (5) whether the work is part of the principal's regular business, (6) the permanency of the

---

[4]We note petitioners conceded at trial and in their post-trial brief that the security services Mr. Specks performed for the third parties were not part of his employment as a HPD police officer.

**[\*7]** relationship and (7) the relationship the parties believe they are creating.

Weber v. Commissioner, 103 T.C. 378, 387 (1994), aff'd, 60 F.3d 1104 (4th Cir.

1995); Rosato v. Commissioner, T.C. Memo. 2010-39.

    1.  Right To Control

An employment relationship is indicated when the service recipient has the

right to control the details and means by which the worker performs the services.

Sec. 31.3401(c)-1(b), Employment Tax Regs.  In contrast, independent contractor

status is indicated where the opposite is true.  Id.  This factor is generally critical in

determining the nature of a working relationship.  See Clackamas Gastroenterology

Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003); Leavell v. Commissioner, 104

T.C. 140, 149-150 (1995); Weber v. Commissioner, 103 T.C. at 387.  Petitioners

did not demonstrate that the third parties maintained the requisite right to control

Mr. Specks in the performance of the security services.  Consequently, this factor

weighs in favor of independent contractor status.

    2.  Investment in Facilities

Independent contractor status is indicated when a worker provides his or her

own tools or supplies used for work.  Ewens & Miller, Inc. v. Commissioner, 117

T.C. at 271 (citing Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 53 (5th Cir.

1990)).  Mr. Specks wore his HPD uniform and carried his personal firearm

**[*8]** when performing the security services for the third parties. Additionally, the record does not reflect that the third parties trained, supplied or equipped Mr. Specks. This factor weighs in favor of independent contractor status.

### 3. Opportunity for Profit or Loss

The opportunity for profit or loss indicates independent contractor status. Simpson v. Commissioner, 64 T.C. 974, 988 (1975). Earning an hourly wage or fixed salary indicates an employment relationship. See Weber v. Commissioner, 103 T.C. at 390-391; Kumpel v. Commissioner, T.C. Memo. 2003-265. Citation and O'Quinn paid Mr. Specks an hourly wage for his services. The record does not reflect whether Finger Furniture paid Mr. Specks an hourly wage or under some other arrangement. Accordingly, there is no evidence that he otherwise had any opportunity for profit or risk of loss in the services he provided. This factor weighs in favor of employee status.

### 4. Right To Discharge

The principal's retaining the right to discharge a worker indicates an employment relationship. See Weber v. Commissioner, 103 T.C. at 391; Colvin v. Commissioner, T.C. Memo. 2007-157, aff'd, 285 Fed. Appx. 157 (5th Cir. 2008). The third parties retained the right to discharge Mr. Specks at will. This factor weighs in favor of employee status.

**[\*9]**   5.  Integral Part of Business

An employment relationship is indicated when the worker is an essential part of the taxpayer's normal business.  See Simpson v. Commissioner, 64 T.C. at 989; Rosemann v. Commissioner, T.C. Memo. 2009-185.  The record does not reflect that the security services Mr. Specks provided to the third parties were an essential part of their business.  This factor weighs in favor of independent contractor status.

6.  Permanency of the Relationship

A continuing relationship indicates an employment relationship, while a transitory relationship may indicate independent contractor status.  Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273.  The extended working relationships Mr. Specks had with Citation and O'Quinn weigh in favor of employee status.  The record is unclear how much time Mr. Specks spent performing security services for Finger Furniture.  The Court infers, however, that it was a short duration because the amount paid to Mr. Specks was small.  Accordingly, this factor weighs in favor of independent contractor status with respect to Finger Furniture.

[*10] 7. <u>Relationship Contemplated by the Parties</u>

Providing benefits such as health insurance, life insurance, paid vacations and retirement plans indicates an employment relationship. <u>Weber v. Commissioner</u>, 103 T.C. at 393-394. The record does not reflect that the third parties provided employee benefits to Mr. Specks during 2008.

Additionally, the record reflects that the third parties did not withhold employment taxes from the amounts paid to Mr. Specks and issued him Forms 1099-MISC for his services. Thus, even if Mr. Specks did not consider himself an independent contractor, the third parties did. The record also does not reflect that Mr. Specks ever attempted to correct the third parties' classification of him as an independent contractor, indicating that Mr. Specks viewed himself as an independent contractor. This factor weighs in favor of independent contractor status.

8. <u>Weighing of the Employee Classification Factors</u>

The relationships between Mr. Specks and the third parties have some aspects characteristic of an employer-employee relationship and others characteristic of a principal-independent contractor relationship. After weighing the above factors, giving greater weight to the right of control factor, we conclude that petitioners failed to meet their burden of proof to establish Mr. Specks' status

**[*11]** as an employee with respect to the third parties. Accordingly, we sustain respondent's determination that Mr. Specks is liable for self-employment tax on the amounts the third parties paid to him.

## II. Real Estate Professional Classification

We now address respondent's contention that the claimed rental loss for 2008 is subject to the passive activity loss limitations under section 469.[5] The deduction of passive activity losses is generally suspended. Sec. 469(a). A passive activity loss is the excess of the aggregate losses from all passive activities over the aggregate income from all passive activities for the taxable year. Sec. 469(d)(1). A passive activity includes the conduct of any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A rental activity generally is treated as a per se passive activity. Sec. 469(c)(2), (4).

A taxpayer may, however, avoid having his or her real estate activity classified as a per se passive activity if the taxpayer is a qualifying real estate professional and satisfies the material participation requirements of section 469(c)(1). A taxpayer will qualify as a real estate professional if (1) more than one-half of the personal services performed in trades or businesses by the taxpayer

---

[5]Respondent first raised the rental loss issue in the answer and therefore bears the burden of proof. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

[*12] during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (2) such taxpayer performs more than 750 hours of service during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B).

A taxpayer's material participation is determined separately with respect to each rental property, unless the taxpayer makes an election to treat all interests in real estate as a single rental real estate activity. Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs.; see Jafarpour v. Commissioner, T.C. Memo. 2012-165. Respondent concedes that, for 2008, petitioners may treat their rental properties as a single activity.

A taxpayer may establish his or her participation in an activity by any reasonable means. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). This Court has acknowledged that "reasonable means" is interpreted broadly and that the temporary regulations may not provide precise guidance. Goshorn v. Commissioner, T.C. Memo. 1993-578. Nevertheless, a postevent "ballpark guesstimate" will not suffice. See Lee v. Commissioner, T.C. Memo. 2006-193; Goshorn v. Commissioner, T.C. Memo. 1993-578.

Where, as here, a joint return has been filed, the foregoing real estate professional requirements are satisfied if either spouse separately satisfies those

[*13] requirements.  Sec. 469(c)(7)(B).  Petitioners concede that Ms. Specks was not involved with the rental activity during 2008.  Thus, petitioners' rental activity is not per se passive, and the normal passive activity loss rules of section 469(c)(1) will apply only if Mr. Specks meets the foregoing requirements.  We now consider whether Mr. Specks qualifies as a real estate professional.

Mr. Specks stipulated that he worked less than 750 hours in the rental activity.  Mr. Specks also stipulated that he worked 2,171.50 hours as an HPD officer and 618.50 hours for Citation.  Accordingly, Mr. Specks cannot satisfy either prong of the test.  Consequently, the rental activity was per se passive.[6]  We therefore hold that the rental loss is subject to the passive activity loss limitations under section 469.

---

[6]Even if taxpayers fail to qualify as real estate professionals under sec. 469(c)(7) and must therefore treat losses from their rental properties as passive activity losses, they may still be eligible to deduct a portion of their losses under sec. 469(i)(1).  A taxpayer who actively participates in a rental real estate activity may deduct a maximum loss up to $25,000 per year related to the activity.  Sec. 469(i).  The deduction is phased out as adjusted gross income, modified by sec. 469(i)(3)(E), exceeds $100,000, with a full phaseout occurring when modified adjusted gross income equals $150,000.  Sec. 469(i)(3)(A).  Respondent concedes that, in 2008, Mr. Specks actively participated in the real estate activity and is entitled to deduct a portion of the rental loss to the extent allowed under sec. 469(i).

**[\*14]** III.  Accuracy-Related Penalty

Finally, we address respondent's determination that petitioners are liable for an accuracy-related penalty under section 6662(a) for 2008.  A taxpayer is liable for an accuracy-related penalty on any part of an underpayment attributable to, among other things, a substantial understatement of income tax.  See sec. 6662(a) and (b)(1) and (2); sec. 1.6662-2(a)(1) and (2), Income Tax Regs.  There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10% of the tax required to be shown on the return, or $5,000.  Sec. 6662(a), (b)(2), (d)(1)(A); sec. 1.6662-4(a) and (b), Income Tax Regs.; see Jarman v. Commissioner, T.C. Memo. 2010-285.

The Commissioner has the burden of production with respect to the accuracy-related penalty.  Sec. 7491(c); Rule 142(a); see Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  We find that respondent has met his burden of production if Rule 155 computations show petitioners have a substantial

[*15] understatement of income tax for 2008.[7]  See Higbee v. Commissioner, 116

T.C. at 446; Jarman v. Commissioner, T.C. Memo. 2010-285.

A taxpayer is not liable for an accuracy-related penalty, however, if the

taxpayer acted with reasonable cause and in good faith with respect to any portion

of the underpayment.  Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  The

determination of whether a taxpayer acted with reasonable cause and in good faith

depends on the pertinent facts and circumstances, including the taxpayer's efforts to

assess his or her proper tax liability; the knowledge, experience and education of the

taxpayer, and the reliance on the advice of a professional.  Sec. 1.6664-4(b)(1),

Income Tax Regs.  Generally, the most important factor is the extent of the

taxpayer's effort to assess the proper tax liability.  Id.  The taxpayer has the

---

[7]Respondent determined in the alternative that petitioners are liable for the accuracy-related penalty on the portion of the underpayment attributable to negligence or disregard of rules or regulations.  "Negligence" includes the failure to make a reasonable attempt to comply with provisions of the Code as well as any failure by the taxpayer to keep adequate books and records or to substantiate deductions and credits claimed on the return.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless or intentional disregard.  See sec. 6662(c).

Petitioners failed to substantiate Mr. Specks' status as an independent contractor of the third parties and their entitlement to the rental loss.  We find therefore that respondent has satisfied his burden of production for imposing the accuracy-related penalty for negligence or disregard of rules or regulations.

**[\*16]** burden of proving the reasonable cause and good-faith exception applies.

Sec. 7491(c); Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners assert they relied on a return preparer to complete their joint individual income tax return for 2008. We have found that reliance on a tax professional demonstrates reasonable cause when a taxpayer selects a competent tax adviser, supplies the adviser with all relevant information and consistent with ordinary business care and prudence, relies on the adviser's professional judgment as to the taxpayer's tax obligations. Sec. 6664(c)(1); Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). All facts and circumstances are considered in determining whether a taxpayer reasonably relied in good faith on professional advice, including the taxpayer's education, sophistication and business experience. Sec. 1.6664-4(a) and (b), Income Tax Regs.

Petitioners did not establish that the return preparer was a competent professional with significant expertise to justify reliance or that petitioners provided the return preparer all relevant information. We therefore do not find that petitioners have shown that it was reasonable to rely on the return preparer. Furthermore, petitioners failed to otherwise show that their underpayment was due to reasonable cause and was in good faith.

**[\*17]** Based on the entire record, we find that petitioners failed to establish that they acted with reasonable cause and in good faith with respect to the underpayment for 2008. Accordingly, petitioners are liable for the accuracy-related penalty on the underpayment for 2008 as reflected in the Rule 155 computation.

We have considered all arguments the parties made in reaching our holding, and, to the extent not mentioned, we find them irrelevant or without merit.

To reflect the foregoing and respondent's concession that petitioners are entitled to deduct a portion of the rental loss to the extent allowed under section 469(i),

<u>Decision will be entered under</u>

<u>Rule 155</u>.