**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-87

UNITED STATES TAX COURT

ROBERT G. FRANKLIN AND MARIANNE L. FRANKLIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3991-11S.                    Filed November 4, 2013.

<u>Barbara R. Roller</u>, for petitioners.

<u>Heather K. McCluskey</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.  Pursuant to section 7463(b), the decision to be entered is not

reviewable by any other court, and this opinion shall not be treated as precedent

for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In a notice of deficiency dated November 15, 2010, respondent determined a deficiency in petitioners' 2008 Federal income tax of $19,485 and a section 6662(a) accuracy-related penalty of $5,201.  After concessions,[1] the issues for decision are:  (1) whether petitioners are entitled to business expense deductions claimed on a Schedule C, Profit or Loss From Business, for expenses related to Robert G. Franklin's (petitioner's) work with IndyMac Resources (IndyMac) and Metrocities Mortgage, LLC, a Prospect Mortgage Company (Metrocities); and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a).  The business expense deduction issue in part depends on substantiation of the claimed expenses and also on whether petitioner was an independent contractor or an employee during 2008.  If petitioner was an employee, the

---

[1]Petitioners concede that they overstated their Federal income tax withholding reported on Form W-2, Wage and Tax Statement, by $6,520 on their 2008 Federal income tax return.  Petitioners also concede that they do not have documentation to substantiate $30,290 of claimed deductions for Schedule C expenses reported on their 2008 Federal income tax return.  Petitioners concede that to the extent the accuracy-related penalty is related to the overstated withholding and the failure to provide documentation to support $30,290 of claimed business expenses, the penalty is applicable.

claimed expenses are subject to limitations and applicable reduction because of the alternative minimum tax (AMT).[2]

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California at the time the petition was filed.

Petitioner has approximately 30 years of experience as a mortgage loan consultant, helping clients qualify for loans. He began working as a real estate agent in 1979 and became a loan officer in 1984. In 2007 petitioner was hired by IndyMac Resources (IndyMac). Petitioner was initially hired as a producing branch manager to manage loan officers and receive a percentage of the loan officers' production. Petitioner's branch never employed any loan officers.

As branch manager, petitioner received a monthly base salary of $4,000. He was also eligible to receive a monthly profitability bonus equal to 10% of his branch's monthly profit as well as a commission for brokering certain loans. Aside from the base salary, petitioner earned income from commissions and from closing loans. On June 4, 2008, petitioner signed an Employee Agreement

---

[2]If the Court concludes that petitioner is an employee, the application of the AMT may result in a disallowance of petitioners' claimed business expense deductions. See secs. 55-59.

Regarding Outside Sales Activities (agreement) with IndyMac. The agreement classified petitioner as an outside sales employee and required him to spend over 50% of his time each workweek traveling and meeting with customers or potential customers to sell IndyMac products and attending trade shows and sales conferences to promote IndyMac products. On the same date petitioner also signed a compensation plan agreement with IndyMac for the job "Retail Lending Group West-Sales Manager". The June 4 compensation plan provided that as sales manager, petitioner could earn incentive compensation for selling certain types of loans.

Petitioner sold loan products for IndyMac but was not required to sell only IndyMac products. He qualified clients for loans, put documentation together, and submitted the loan packages to the underwriter. When petitioner was hired, IndyMac did not advise him on how to get business for IndyMac, but IndyMac did specify the manner in which the loan packages were to be submitted to the underwriter. Petitioner had very few loans that were not accepted by underwriters. When petitioner processed loans, he also followed guidelines set by Fannie Mae, Freddie Mac, FHA, and VA, since they insured and guaranteed the loans.

IndyMac did not have any offices near petitioner, so IndyMac provided him an executive office suite in San Luis Obispo, which it obtained specifically for

him. Petitioner did not have a personal receptionist; the suite was in a building that housed attorneys' offices, and the entire building shared a receptionist. IndyMac paid the rent for the executive office suite, set up a server so that petitioner had Internet service, and set up the computer and phone system for the office. Petitioner also maintained a home office, which he used primarily in the mornings and again in the evenings. IndyMac did not require petitioner to have a home office.

Although IndyMac provided petitioner with the executive suite, he did not use it very often. Petitioner found business mainly from working in real estate offices and going to multiple listing service (MLS) meetings. IndyMac also had an internal lead program, which required petitioner to contact leads assigned to him through the program within a certain timeframe and to create a lead in a software program, Encompass, for each assigned lead.

Petitioner's employment and compensation agreements with IndyMac specified that his employment with IndyMac was at will and that either petitioner or IndyMac could terminate his employment at any time. Petitioner worked at IndyMac until approximately July 11, 2008, when IndyMac was taken over by the FDIC as an insolvent bank. Metrocities then acquired IndyMac, and on August 8, 2008, petitioner entered into a branch manager employment agreement

(employment agreement) with Metrocities. Petitioner performed the same work at Metrocities as a producing branch manager as he had at IndyMac, and Metrocities maintained the same office that IndyMac had provided for petitioner.

At Metrocities petitioner generated his own leads and obtained a list of potential leads from a Web site that Metrocities maintained. Potential borrowers could enter their information into the Web site, and then Metrocities' loan officers had access to the contact information and would follow up.

Petitioner enrolled in health insurance plans at group rates through both IndyMac and Metrocities, which he paid for, at least in part, out of his pretax income. Petitioner received holiday pay from IndyMac during the first five months of 2008, and his pay statements indicate that he earned vacation and sick leave and used vacation leave during the year in issue. He also contributed to a section 401(k) plan account while he worked at IndyMac.

Petitioner's employment agreement with Metrocities provided that he would be paid incentive compensation in accordance with his compensation plan and that he was eligible to participate in benefits programs that Metrocities maintained for employees. The Metrocities employment agreement prohibited petitioner from working for any other company engaged in the real estate finance business and from originating or underwriting loans for any other lending institution while

employed by Metrocities. Metrocities did not offer a section 401(k) plan, nor did it provide holiday pay, sick pay, or vacation pay. Since petitioner did not earn money at Metrocities unless he was working, he checked messages while he was on vacation so that he would not miss any business opportunities.

During 2008 petitioner worked approximately 80 hours a week. He worked Monday through Friday and during the weekends, when real estate agents held open houses. He attended many of the open houses in order to talk with potential borrowers. At some large open houses, petitioner would have a barbecue. He viewed the open houses as an opportunity to meet new borrowers who could potentially provide him with business. Petitioner primarily spent his time working in real estate offices, at lunches, and taking clients out in the evening.

Every morning, petitioner watched financial television shows and then went online to check the stock market. The stock market affected the interest rates on loans, so petitioner watched the market in order to lock in loans at the best interest rates for his customers.

After checking the stock market each morning, petitioner emailed a daily marketing update to several hundred real estate agents, past customers, and borrowers. Petitioner was the in-house lender for Prudential Real Estate (Prudential) on the central California coast, and he attended weekly office

meetings at Prudential's various offices. As the in-house lender, Prudential allowed petitioner to enter its offices at any time and use its telephones and copiers. Petitioner bought breakfast for attendees of the meetings to try to get business from them. Some of the offices had only 20 people, and others had 40 to 50. Petitioner continued to go to Prudential's offices after he began working at Metrocities.

Petitioner tried to have lunch every day with a new agent or customer in order to create business relationships. He also went out for drinks, appetizers, or dinner with realtors, sometimes bringing Mrs. Franklin if the realtor's husband or wife was also attending. It was important to petitioner to create relationships with his clients, because once he established those relationships, the clients trusted him and knew that he would help the clients' customers. Petitioner did not have as much business in 2008 because of financial turmoil. Despite losing business, petitioner continued "the wining and the dining" because clients still expected it and petitioner was concerned about establishing business relationships.

Petitioner did not have any discussions with IndyMac or Metrocities about whether he was a statutory employee. He chose to not have Federal income tax withheld from his pay from IndyMac. Petitioner received Forms W-2 for tax year 2008, from IndyMac and Metrocities. The combined Forms W-2 reported that for

2008, petitioner had "Wages, tips, other comp." of $146,737.46. The Form W-2 from IndyMac reported that IndyMac withheld State income tax and Social Security and Medicare taxes and that petitioner had a retirement plan but that IndyMac did not withhold Federal income tax. The Form W-2 from Metrocities reported that Metrocities withheld Federal and State income taxes and Social Security and Medicare taxes. Neither IndyMac nor Metrocities reported on the Forms W-2 that petitioner was a statutory employee.

Petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for 2008, which was prepared by Barbara R. Roller, petitioners' counsel in this proceeding. Petitioners reported $33,077 on line 7, "Wages, salaries, tips, etc.". On an attached Schedule C petitioner reported his principal business or profession as "Mortgage broker/loans" and reported gross receipts or sales of $113,660, a portion of the wage amounts shown on the Forms W-2 that IndyMac and Metrocities issued. Petitioner checked the box on line 1 of his Schedule C and represented that his Forms W-2 identified him as a statutory employee. Petitioners included with their 2008 return a statement regarding the transfer of a portion of petitioner's wages to Schedule C, asserting that $65,048.27 of the Form W-2 wages were transferred to Schedule C as self-employed gross receipts previously subject to payroll tax withholding.

Petitioners reported $70,617 of expenses related to petitioner's work for IndyMac and Metrocities on their Schedule C. Respondent disallowed all of the claimed expense deductions for lack of substantiation. Petitioners concede that they are unable to substantiate $30,289.73 of the reported expenses but assert in their pretrial memorandum that they are entitled to deduct $40,327.27 of the expenses reported on their Schedule C as follows:

| Expense | Reported on Schedule C | Petitioners' pretrial memo |
|---|---|---|
| Advertising | $1,500 | $15.00 |
| Car and truck | 6,595 | 4,380.53 |
| Travel | 3,800 | 4,204.16 |
| Meals and entertainment | 27,425 | 11,061.50 |
| Business use of home | 5,930 | 4,950.29 |
| Other | [1]25,367 | [2]16,285.79 |

[1]The $25,367 of "other expenses" on the Schedule C consists of $15,600 for business gifts, $276 for fax telephone line, $1,104 for business telephone line, $142 for Pismo Coast MLS, $684 for satellite fees, $499 for Internet access fees, $1,380 for postage, $792 for land phone line, and $4,890 for other expenses of promotions and cellular telephone.

[2]These other expenses consist of $3,858.86 for business gifts, $2,381.96 for cellular telephone, $772.45 for home office telephone line, $1,133.60 for home office business line, $307 for home office fax line, $1,174.11 for home office satellite fees, $312.21 for XM satellite radio, $2,743 for appraisal fee reimbursements to clients, $277.12 for multiple service listing fees, $249 for miscellaneous real estate expenses, $1,170.23 for office supplies, $408.63 for computer expenses, $92.91 for telephone equipment, $258.98 for postage, $96 for bank charges for a business checking account, and $480 for a limousine service.

In the notice of deficiency the IRS determined that petitioner was a common law employee and therefore was not permitted to report income and expenses on Schedule C. The explanation in the notice stated:

> Only statutory employee income can be offset by expenses reported on Schedule C, Profit or Loss From Business, or Schedule C-EZ. Since your employer did not indicate on Form W-2, Wage and Tax Statement, that you were a statutory employee, we cannot allow the expenses used to offset that income on Schedule C or Schedule C-EZ.

On the basis of these adjustments the IRS determined a deficiency for 2008 of $19,485. The IRS further determined that petitioners are liable for the accuracy-related penalty under section 6662(a).

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners did not allege that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioners bear the burden of proof. See Rule 142(a).

Each taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a previous year. Auto. Club of

Mich. v. Commissioner, 353 U.S. 180 (1957); Rose v. Commissioner, 55 T.C. 28 (1970).  Thus, the IRS' failure to challenge petitioner's claimed statutory employee status during the prior years does not entitle him to that status for the year at issue.

I.      Employment Status

The principal issue for decision is whether petitioners correctly reported petitioner's business expenses on Schedule C as those of a self-employed individual rather than on Schedule A, Itemized Deductions, as itemized expenses, as respondent contends they should have.  The distinction matters because Schedule A itemized deductions are subject to various limitations that do not apply to Schedule C deductions.

An individual performing services as an employee generally may deduct expenses incurred in the performance of such services as miscellaneous itemized deductions on Schedule A only to the extent the expenses exceed 2% of the taxpayer's adjusted gross income.  Secs. 62(a)(2), 63(a), (d), 67(a) and (b), 162(a). Itemized deductions may be limited under section 68 and may have alternative minimum tax implications under section 56(b)(1)(A)(i).

Independent contractors and self-employed persons may report their compensation less related expenses on business income on Schedule C, thereby

avoiding limitations on the deductibility of employee business expenses and other itemized deductions reportable on Schedule A. See Weber v. Commissioner, 103 T.C. 378, 386 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995); Feaster v. Commissioner, T.C. Memo. 2010-157. To be properly reported on Schedule C, a taxpayer's expenses must come from a trade or business of his or her own other than that of being an employee. See Rosato v. Commissioner, T.C. Memo. 2010-39. For this purpose, a statutory employee under section 3121(d)(3)(D) is not an employee and may deduct business expenses on Schedule C. See Cole v. Commissioner, T.C. Memo. 2006-44.

An individual qualifies as a statutory employee under section 3121(d)(3) only if the individual is not a common law employee pursuant to section 3121(d)(2). See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001); Rosemann v. Commissioner, T.C. Memo. 2009-185. Section 3121(d) defines "employee", in pertinent part, as follows:

> SEC. 3121(d). Employee.--For purposes of this chapter, the term "employee" means--
>
> (1) any officer of a corporation; or
>
> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee * * *

Because an individual qualifies as a statutory employee only if the individual is not a common law employee, we will first decide whether petitioner was a common law employee of IndyMac or Metrocities.

Whether an individual is an employee or an independent contractor is a factual question to which common law principles apply. Sec. 3121(d)(2); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992); Weber v. Commissioner, 103 T.C. at 386; Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988). Factors that are relevant in determining the substance of an employment relationship include: (1) the degree of control exercised by the principal over the details of the work; (2) the taxpayer's investment in the facilities used in his or her work; (3) the taxpayer's opportunity for profit or loss; (4) the permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's regular business; (7) the relationship the parties believe they are creating; and (8) the provision of employee benefits. NLRB v. United Ins. Co., 390 U.S. 254, 258-260 (1968); United States v. Silk, 331 U.S. 704, 716 (1947); Weber v. Commissioner, 103 T.C. at 387; Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. at 232; see also sec.

31.3121(d)-(1)(c)(2), Employment Tax Regs. (setting forth criteria for identifying employees under common law rules).

We consider all of the facts and circumstances of each case, and no single factor is determinative. Nationwide Mut. Ins. Co., 503 U.S. at 324; Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 270; Weber v. Commissioner, 103 T.C. at 387. The factors are not necessarily weighted equally; they are considered according to their significance in the particular case. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992).

A. Degree of Control

Although not the exclusive inquiry, the degree of control exercised by the principal over the worker is the most important consideration in determining the nature of a working relationship. See Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003); Leavell v. Commissioner, 104 T.C. 140, 149-150 (1995). The degree of control necessary to find employment status varies with the nature of the services provided by the worker. See Weber v. Commissioner, 103 T.C. at 388; Potter v. Commissioner, T.C. Memo. 1994-356. Where the inherent nature of the job mandates an independent approach, a lesser degree of control exercised by the principal may result in a finding of an employer-employee status. See Potter v. Commissioner, T.C. Memo. 1994-356;

Bilenas v. Commissioner, T.C. Memo. 1983-661. To possess a degree of control over a worker indicative of employment, the principal need not direct the worker's every move; it is sufficient if the right to do so exists. Weber v. Commissioner, 103 T.C. at 387; see sec. 31.3401(c)-1(b), Employment Tax Regs. Similarly, the principal need not set the worker's hours or supervise every detail of the work environment to control the worker. Gen. Inv. Corp. v. United States, 823 F.2d 337, 342 (9th Cir. 1987).

The inherent nature of petitioner's position selling loan products calls for him to follow an independent approach in making sales. However, both IndyMac and Metrocities either exercised appropriate control over petitioner or had the authority to exercise it in a manner suggesting that he was an employee of both IndyMac and Metrocities. Petitioner was required to follow certain guidelines for loans that he processed and was required to submit loan packages in the formats specified by IndyMac and Metrocities. If petitioner did not comply with IndyMac's guidelines or meet its expectations, the compensation plan agreement permitted IndyMac to take actions it deemed appropriate, including termination. Petitioner's employment agreement with Metrocities listed his duties and responsibilities, and he agreed to comply fully with Metrocities' policies and procedures. Under the employment agreement, petitioner was not permitted to

work simultaneously for any other company engaged in the real estate finance business, and he had no authority to bind Metrocities without written consent of an appropriate officer. This factor weighs heavily in favor of a finding that petitioner was a common law employee of both IndyMac and Metrocities.

B. Investment in Facilities

Maintenance of a home office is consistent with independent contractor status, although alone it does not constitute sufficient basis for a finding of independent contractor status. See Colvin v. Commissioner, T.C. Memo. 2007-157, aff'd, 285 Fed. Appx. 157 (5th Cir. 2008). Both IndyMac and Metrocities provided petitioner with an office in which to conduct business. Petitioner claimed a deduction for home office expenses for work done at his home, but neither IndyMac nor Metrocities required him to maintain a home office. Since IndyMac and Metrocities both provided an office to petitioner, this factor indicates employee status.

C. Opportunity for Profit or Risk of Loss

The opportunity for profit or loss based on the worker's own efforts and skill indicates independent contractor status. Simpson v. Commissioner, 64 T.C. 974, 988 (1975); see also Rosato v. Commissioner, T.C. Memo. 2010-39. Earning an hourly wage or fixed salary indicates an employer-employee relationship. See

Robinson v. Commissioner, T.C. Memo. 2011-99 (citing James v. Commissioner, 25 T.C. 1296, 1300 (1956)), aff'd, 487 Fed. Appx. 751 (3d Cir. 2012).

IndyMac paid petitioner a base salary of $4,000 per month, and he was also entitled to a percentage of the proceeds from mortgage loans that he closed. Aside from the base salary, petitioner was not guaranteed any compensation. Petitioner asserts that the base salary was actually an incentive payment and that he stopped receiving the base salary on or around June 4, 2008, when he signed the agreement with IndyMac. Petitioner was not paid a fixed wage by Metrocities.

Petitioner received a fixed salary for a portion of 2008, but for the remainder of the year he was not paid a fixed salary. This factor indicates that petitioner was a common law employee until June 1, 2008, when he stopped receiving a fixed salary, and was an independent contractor thereafter. Id.

D. Right To Discharge

The principal's retention of the right to discharge a worker is indicative of a common law employer-employee relationship. See Weber v. Commissioner, 103 T.C. at 391. Both IndyMac and Metrocities considered petitioner an at-will employee and retained the right to discharge him at any time. This factor weighs in favor of common law employee status. See Kumpel v. Commissioner, T.C. Memo. 2003-265.

E.  Integral Part of Regular Business

Where a type of work is part of the principal's regular business, it is indicative of employee status.  See Simpson v. Commissioner, 64 T.C. at 989; Rosemann v. Commissioner, T.C. Memo. 2009-185.  The business of IndyMac and Metrocities was the sale of mortgage loans, and petitioner sold mortgage loans for both companies.  Thus, the work petitioner performed was part of IndyMac's and Metrocities' regular business, and this indicates common law employee status. Id.

F.  Permanency of Relationship

A continuing relationship indicates an employment relationship, while a transitory relationship may be indicative of independent contractor status.  Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273.  Petitioner worked at IndyMac from May 8, 2007, until approximately July 11, 2008, when IndyMac was taken over by the FDIC as an insolvent bank.  On or around August 8, 2008, Metrocities acquired IndyMac, and petitioner signed a new employment agreement with Metrocities.  Under the terms of petitioner's Metrocities employment agreement, he was prohibited from working for any other company engaged in the real estate finance business and from originating or underwriting loans for any other lending institution while he was employed by Metrocities.  On the basis of the record, it

appears that petitioner's relationships with both IndyMac and Metrocities were permanent and were indicative of common law employee status.

G.  Relationship Contemplated by the Parties

The withholding of taxes is consistent with a finding that an individual is a common law employee.  See Packard v. Commissioner, 63 T.C. 621, 632 (1975); Rosato v. Commissioner, T.C. Memo. 2010-39.  Both IndyMac and Metrocities issued Forms W-2 to petitioner for 2008.  IndyMac did not withhold any Federal income tax from petitioner's pay, but it did withhold State income tax and Social Security and Medicare taxes from his pay.  Metrocities withheld Federal and State income taxes and Social Security and Medicare taxes from his pay, indicating common law employee status.

Petitioner's agreements to work for IndyMac and Metrocities were evidenced by writings, and those employment agreements indicate that both IndyMac and Metrocities considered him a common law employee.  Furthermore, petitioner never had any discussions with either IndyMac or Metrocities regarding whether he was a statutory employee.  This factor indicates common law employee status.

H.  Provision for Employee Benefits

Provision of benefits such as health insurance, life insurance, paid vacation leave, and retirement plans are indicative of an employment relationship.  Weber v. Commissioner, 103 T.C. at 393-394.  Petitioner enrolled in health insurance plans at a group rate through both IndyMac and Metrocities, which he paid for, at least in part, out of his pretax income.  Petitioner also contributed to a section 401(k) plan account while he worked at IndyMac.  He also received holiday pay during the first five months of 2008 at IndyMac.  With respect to IndyMac, this factor weighs in favor of common law employee status.

Metrocities did not offer a section 401(k) plan, nor did it provide holiday pay, sick pay, or vacation pay.  With respect to Metrocities, this factor weighs in favor of independent contractor status.

I.  Conclusion

Considering the record and taking into account all the facts and circumstances, we conclude that petitioner was a common law employee of both IndyMac and Metrocities.

II.  Business Expenses

The Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving the determinations erroneous.  Rule 142(a).

The taxpayer bears the burden of proving that he is entitled to the deduction claimed, and this includes the burden of substantiation. Id.; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001. Section 162(a) provides a deduction for certain business-related expenses. In order to qualify for the deduction under section 162(a), "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971); Deputy v. du Pont, 308 U.S. 488, 495 (1940) (to qualify as "ordinary", the expense must relate to a transaction "of common or frequent occurrence in the type of business involved"). Whether an expense is ordinary is determined by time, place, and circumstance. Welch, 290 U.S. at 113-114.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the expense, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In order for the Cohan rule to apply, there must be

sufficient evidence in the record to provide a basis for the estimate. Vanicek v.

Commissioner, 85 T.C. 731, 743 (1985). Certain expenses may not be estimated

because of the strict substantiation requirements of section 274(d). See sec.

280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per

curiam, 412 F.2d 201 (2d Cir. 1969).

Section 274(d) applies to certain business expenses including, among other

things, expenses for gifts and listed property (e.g., automobile expenses, cellular

telephones, computer equipment, or any property of a type generally used for

purposes of entertainment, recreation, or amusement) and travel expenses

(including meals and lodging while away from home). Secs. 274(d),

280F(d)(4)(A). To substantiate a deduction attributable to listed property, a

taxpayer must maintain adequate records or present corroborative evidence to

show the following: (1) the amount of the expense; (2) the time and place of use

of the listed property; and (3) the business purpose of the use. Sec. 1.274-

5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

A. Advertising

On their 2008 Schedule C petitioners claimed, and respondent disallowed, a

deduction for $1,500 of advertising expenses. Petitioners assert that they are

entitled to a deduction for only $15 of advertising expenses. Petitioners provided

a copy of a credit card statement showing a $15 charge for direct marketing Internet. Petitioners have substantiated $15 of advertising expenses and are entitled to a deduction in that amount.

B. Car and Truck Expenses

Petitioners assert that they are entitled to deductions totaling $4,380.53 for car and truck expenses for two automobiles. Petitioners' passenger automobiles are listed property under section 280F(d)(4)(A)(i) and thus related expenses are subject to the substantiation requirements of section 274(d). A taxpayer must prove four elements to be allowed a deduction for listed property: (1) the amount of each expenditure, (2) the amount of use, (3) the time of the expenditure or use, and (4) the business or investment purpose of the expenditure or use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., supra. The amount of expenditure concerns the amount of each separate expenditure with respect to an item of listed property whereas the amount of use concerns the amount of each business or investment use based on the appropriate measure and the total use of the listed property for the taxable period. Sec. 1.274-5T(b)(6)(i)(A) and (B), Temporary Income Tax Regs., supra. Additionally, a taxpayer must substantiate each element by adequate records or by sufficient evidence corroborating his testimony. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

To satisfy the adequate records standard, the taxpayer shall maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record and other documentary evidence such as receipts. Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Petitioner kept track of his automobile mileage using a daily mileage log that he kept on his calendar. There are several problems with the mileage log. First, the log notes only the number of miles driven each day and generally includes no information regarding where petitioner drove, the purpose of the trip, or his business relationship to the persons he visited. Second, it appears that petitioner included in the mileage log the miles he drove commuting to and from his office in San Luis Obispo. Third, petitioners used their cars for personal as well as business purposes, but they did not maintain records allocating the personal and business use of their cars.

We believe petitioners both used their cars, at least to an extent, in the conduct of a trade or business. The records that they maintained, however, are not adequate to substantiate a deduction for car and truck expenses under section 274. Consequently, we sustain respondent's determination that petitioners are not entitled to deduct any car and truck expenses for 2008.

C. <u>Travel</u>

On their 2008 Schedule C petitioners claimed, and respondent disallowed, a deduction for $3,800 in travel expenses. Petitioners assert that they are entitled to a deduction of $4,204.16. These expenses are likewise subject to the strict substantiation requirements of section 274(d).

As substantiation for the travel expenses petitioners submitted credit card statements showing charges for both domestic and foreign airline tickets and hotels. Petitioner testified that he incurred travel expenses when he attended education seminars that usually took place in California. Petitioner incurred foreign travel expenses when he went to Spain with his daughter to visit former exchange students that had stayed with petitioners. Petitioner deducted his foreign travel expenses because he asserts that while he was in Spain, he discussed buying properties in the United States with a couple of the families and "kind of pre-qualified them * * * and showed them how they could go online to view properties in the areas".

As petitioner did not offer detailed testimony regarding the location and business nature of the domestic and foreign trips for which he claimed deductions, the credit card statements he provided are not sufficient corroborating evidence to substantiate the deduction under section 274(d). Consequently, we sustain

respondent's determination that petitioners are not entitled to a deduction for travel expenses.

D. Meals and Entertainment

On their 2008 Schedule C petitioners claimed, and respondent disallowed, a deduction for $27,425 in meals and entertainment expenses. Petitioners concede that they are unable to substantiate a portion of the deduction and assert that they are instead entitled to a deduction of $11,061.50.

A deduction is not allowed for meals and entertainment expenses unless the taxpayer properly substantiates: (1) the amount of such expense, (2) the time and place of the expense, (3) the business purpose, and (4) the business relationship between the taxpayer and the persons being entertained. Sec. 274(d).

To substantiate their deduction for meals and entertainment expenses, petitioners offered receipts for the business meals. The receipts generally identify the place and date that each of the expenses were incurred. Some of the receipts identify, in handwriting on the receipt, the name of the person with whom petitioner dined, but they do not identify the relationship between him and the person being entertained or the specific business purpose for the meal. Petitioners are not entitled to any meals and entertainment expense deductions because the

receipts provided do not meet the strict substantiation requirements of section 274(d). See Sanford v. Commissioner, 50 T.C. at 827-828.

E. Business Use of Home

Petitioners claimed, and respondent disallowed, a deduction of $5,930 for business use of their home. In their pretrial memorandum, petitioners assert that they are entitled to a deduction of $4,950.29 for business use of their home.

In general, a taxpayer is not entitled to deduct any expenses related to the use of a dwelling unit used by the taxpayer as a residence during the taxable year. See sec. 280A. Expenses attributable to a home office are excepted from this general rule, however, if the expenses are allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or business. See sec. 280A(c)(1); Lofstrom v. Commissioner, 125 T.C. 271, 278 (2005). If the taxpayer is an employee, the exception under section 280A(c)(1) will apply only if the home office is maintained for the convenience of the employer. See Hamacher v. Commissioner, 94 T.C. 348, 353-354 (1990). An employee satisfies this requirement when the employee maintains the home office as a condition of his employment or as necessary for the functioning of the employer's business or as necessary for the employee to properly perform his duties. Id. at 358. The home office must not,

however, "be 'purely a matter of personal convenience, comfort, or economy' with respect to the employee." Id. (quoting Sharon v. Commissioner, 66 T.C. 515, 523 (1976), aff'd, 591 F.2d 1273 (9th Cir. 1978)).

Petitioner does not claim that the home office was used exclusively on a regular basis as his principal place of business or that the home office was maintained for the convenience of his employers. Petitioner's employers did not require him to maintain a home office. The fact that he used the home office for business purposes is insufficient to allow any deduction attributable to that use. See Lofstrom v. Commissioner, 125 T.C. at 278. Petitioners are not entitled to a home office deduction for 2008, and respondent's determination in this regard is sustained.

## F. Other Expenses

### 1. Business Gifts

The heightened substantiation requirements of section 274 also apply to business gifts. Sec. 274(d)(3). Petitioner introduced a list of the business gifts that he gave to clients and realtors as well as corresponding receipts showing purchase of the gifts as evidence in support of his claimed deductions for business gifts for 2008. Petitioner explained the business purpose of the gifts and the business relationships with the persons to whom the gifts were given. See sec.

1.274-5T(b)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Petitioner has substantiated $3,425 of business gifts and is entitled to a deduction in that amount.[3]

    2. Cellular Telephone, Telephone, Internet, Fax, and Satellite Expenses

Petitioners assert in the pretrial memorandum that they are entitled to deductions of $2,381.96 for cellular telephone expenses, $772.45 for home office telephone line expenses, $1,133.60 for home office business line expenses, $307 for home office fax line expenses, $1,174.11 for home office satellite fees, and $312.21 for XM Satellite Radio expenses.

Cellular phones are included in the section 280F definition of listed property. Sec. 280F(d)(4)(v). Therefore, expenses attributable to cellular phones are subject to the heightened substantiation requirements of section 274(d), which require a taxpayer to substantiate (1) the amount of each use or expenditure, (2) the time and place of the use or expenditure, and (3) its business purpose. Sec. 274(d)(4); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., supra.

---

[3]Petitioners asserted in their pretrial memorandum that they are entitled to a deduction of $3,858.86 for business gifts, but several of the receipts and statements they provided as substantiation were duplicative and had been included twice in their calculation.

Petitioners introduced cellular phone bills from Verizon Wireless in support of their claimed cellular phone expense deduction. Though petitioner credibly testified about using his cellular phone for business, he did not substantiate the expense within the meaning of section 274(d)(4) because he did not substantiate the amount of time he used his cellular phone for business purposes, the time and place of these uses, and the business purpose of these uses. Therefore, petitioners are not entitled to a deduction for cellular phone expenses.

Expenses for telephone service are deductible under section 162(a), provided they are ordinary and necessary to the taxpayer's trade or business. See Vanicek v. Commissioner, 85 T.C. at 742. To the extent that telephone expenses are attributable to nonbusiness use, they are nondeductible personal living expenses. See sec. 262(a). Section 262(b) provides that the first telephone line in a taxpayer's residence will be treated as a personal expense. See Bogue v. Commissioner, T.C. Memo. 2011-164, slip op. at 40, aff'd, 522 Fed. Appx. 169 (3d Cir. 2013).

Petitioners assert in the pretrial memorandum that they are entitled to deductions for a home office telephone line and a home office fax line. In support of these telephone and fax expense deductions, petitioners introduced copies of bank statements showing that they made payments on various dates to AT&T and

copies of monthly statements from AT&T.  These deductions and statements in support of the deductions appear duplicative, and some of the payments may be for a first residential telephone line, the expenses of which are per se nondeductible pursuant to section 262(b).  For these reasons, petitioners are not entitled to deduct any amounts incurred for the home office telephone line or the home office fax line.

Petitioners assert they are entitled to a deduction for Internet access fees.[4] The Court has characterized Internet expenses as utility expenses.  Verma v. Commissioner, T.C. Memo. 2001-132.  Strict substantiation therefore does not apply, and the Court may estimate petitioners' deductible expenses provided that the Court has a reasonable basis for making an estimate.  Cohan v. Commissioner, 39 F.2d at 544; see Vanicek v. Commissioner, 85 T.C. at 742-743 (an estimate must have a reasonable evidentiary basis).  Petitioner presented credible testimony that in 2008, the Internet service at his home was primarily for business use and that any personal use was incidental.  Using our best judgment, we hold that petitioner is allowed a deduction of $377 for Internet service.

---

[4]Petitioners introduced documents in support of their Internet expenses. The amount in the documents is the same amount listed for "Home Office Business Line" in petitioners' pretrial memorandum.

Petitioners assert that they are entitled to a deduction for home office satellite and/or cable fees. To support this deduction, petitioners submitted credit card statements showing payments made to the Dish Network. Though petitioners incurred these expenses during the year in issue, his testimony and the documents submitted do not establish that the satellite and/or cable expenses for his entire home are ordinary and necessary business expenses for a mortgage loan officer. We sustain respondent's determination disallowing the deduction for these expenses.

Petitioners also claimed a deduction for XM satellite radio in their vehicles. Petitioners submitted checks payable to XM Satellite Radio to substantiate their deduction. Though petitioner listened to the radio in his car to keep abreast of relevant breaking news, the expense is inherently personal, and he has not demonstrated that the radio expense was an ordinary and necessary business expense. See sec. 262.

### 3. Real Estate Expenses

Petitioners assert that they are entitled to deductions of $2,743 for appraisal fee reimbursements to clients, $277.12 for multiple service listing fees, and $249 for miscellaneous real estate expenses.

In support of their deduction for appraisal fee reimbursements to clients, petitioners submitted copies of two checks totaling only $1,092. It is not clear to whom the checks are payable or the purpose of the checks. Furthermore, they are from petitioners' joint bank account. Petitioners have not demonstrated that the amounts paid were ordinary and necessary business expenses, and we sustain respondent's determination disallowing the deduction for appraisal fee reimbursements.

Petitioners claimed deductions for expenses of multiple service listing fees and miscellaneous real estate expenses. To support these deductions, petitioners submitted a copy of a bank statement showing a payment by check of $135 (petitioners did not show how this check was a related real estate or listing fee expense or that it was otherwise ordinary and necessary), a check for $142.12 payable to Pismo Coast MLS, and a credit card statement showing a charge of $249 to Consolidated Real Estate. We are satisfied that of these amounts $391.12 was for ordinary and necessary business expenses and that petitioners are entitled to a deduction in that amount.

### 4. Office Supplies, Computer Expenses, Telephone Equipment, Postage, Bank Charges

Petitioners assert they are entitled to a deduction of $1,170.23 for office supplies. To support the deduction, petitioners submitted credit card statements with handwritten notations of "office supplies" next to certain charges. Nothing in the record establishes the expenses were ordinary and necessary for petitioner's business rather than personal. We sustain respondent's determination disallowing the deduction for office supplies.

Petitioners' pretrial memorandum asserts they are entitled to a deduction of $408.63 for computer expenses. Petitioner did not provide any testimony regarding these expenses, and the documents submitted to substantiate the expenses are copies of credit card statements with handwritten notations of "computer" next to certain charges. Petitioners have not established that the computer expenses were ordinary and necessary rather than personal, and they are not entitled to a deduction for computer expenses.

Petitioners assert in their pretrial memorandum that they are entitled to a deduction of $92.91 for telephone equipment. Petitioners did not submit any documentation in support of this deduction, nor did petitioner provide any

testimony regarding this expense. Petitioners have therefore not established that they are entitled to a deduction for telephone equipment.

Petitioners reported postage expenses of $1,380 on their Schedule C but in their pretrial memorandum assert that they are entitled to a deduction for postage expenses of only $258.98. In support of the deduction, petitioners submitted a copy of a check, receipts from various post offices, and credit card statements with charges at USPS. Petitioners have not established that these expenses were ordinary and necessary rather than personal, and they are not entitled to a deduction for postage.

Petitioners' pretrial memorandum asserts that they are entitled to a deduction of $96 for bank charges for petitioner's business checking account. Petitioners submitted bank statements showing an $8 monthly maintenance charge. Though petitioners may have had a separate account that petitioner used for business expenses, both petitioners' names appear on the checking account statements they submitted for petitioner's business checking account. Petitioners have therefore not established that this expense was ordinary and necessary, and they are not entitled to a deduction for petitioner's business checking account fees.

Petitioners also claimed a deduction of $480 for a limousine service. Petitioners incurred the expense when they took a realtor and his wife to several

wineries.  Petitioner also provided a credit card statement showing a charge of $480 to California Limousine.  Though petitioners claimed this as an "other expense", this expense is really in the nature of an entertainment expense, which is subject to the heightened substantiation requirements of section 274.  To prove a business expense for entertainment, the taxpayer must show:  (1) the amount of the expenditure; (2) the time and place of the entertainment; (3) the business purpose for the entertainment; and (4) the taxpayer's business relationship with the persons entertained.  Sec. 1.274-5T(b)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985).  Petitioners did not provide all of the information required to substantiate this expense and are not entitled to a deduction for the limousine service.

### G.  Conclusion

On the basis of the foregoing, petitioners are entitled to deductions in the following amounts:  $15 for advertising, $3,425 for business gifts, $377 for Internet service, and $391.12 for real estate expenses.

## III.  Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax.  "Negligence"

includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See id. at 447; see also Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Petitioners claimed some deductions on their 2008 return that they are unable to substantiate. See sec. 6662(b)(1); sec. 1.6662-3(b)(1), Income Tax Regs. Therefore, respondent's burden of production under section 7491(c) has been satisfied.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and any reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

The underpayment at issue is attributable to respondent's Schedule C adjustments. We are satisfied that petitioners, who relied on their return preparer and included with their return a statement disclosing the transfer of a portion of petitioner's wages to Schedule C, made a good-faith effort to properly determine their 2008 Federal income tax liability. Accordingly, we hold that petitioners are not liable for the section 6662(a) accuracy-related penalty for 2008 to the extent that their counsel has not already conceded liability for the penalty as more fully described supra note 1.

To reflect the foregoing,

Decision will be entered under Rule 155.